FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 21, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NORTHFIELD INSURANCE COMPANY, a foreign insurer,
Plaintiff,
v.

JENNIFER RAMBOW, an individual; ISIDRO CRUZ AMARO a/k/a "JUNIOR", an individual; JETAIME RENAE CRUZ, an individual; and DESERT DEBAUCHERY, LLC, a Washington limited liability company,
Defendants.

No. 2:25-CV-00025-SAB

**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANT AMARO**

Before the Court is Plaintiff's Motion for Default Judgment, ECF No. 29. Plaintiff is represented by Alexander Goldman and Thomas Lether. Defendant Desert Debauchery LLC is represented by Kasey Huebner and Emily Uppal. Defendants Rambow, Cruz, and Amaro, have been served and have not made appearances. The motion was considered without oral argument.

First, the parties have informed the Court they have reached settlement as to Plaintiff and Defendants Desert Debauchery, Jennifer Rambow and Jetaime Renae Cruz, which the Court will address in a separate order. Thus, the pending motion for default remains as to Defendant Isidro Cruz Amaro, only.

Having reviewed the briefing and caselaw, the Court grants the motion.

**MOTION STANDARD**

Pursuant to Fed. R. Civ. P. 55(b)(1), a party can move for default judgment if a party "has failed to plead or otherwise defend" the action. Local Civil Rule 55(b) requires: (1) the party file a motion for entry of default and obtain an order of default from the clerk of court; and (2) the party file a motion for default judgment. Granting default judgment is left to the discretion of the court; it is not automatic. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

In reviewing the motion, a court shall consider: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

**BACKGROUND**

This case was filed in the U.S. District Court for the Eastern District of Washington on January 20, 2025. Plaintiff Northfield Insurance seeks a declaratory judgment that it does not have an obligation to provide any defense coverage or indemnity coverage to Defendant Amaro under the Northfield Insurance Policy ("the Policy") issued to Desert Debauchery, LLC and NW Cruz Investments LLC, with regards to claims in the underlying lawsuit. The allegations of the underlying lawsuit are as follows.

Plaintiff alleges that on February 9, 2021, Defendant Rambow and a friend

Ms. Hemme had food and drinks at R Place Tavern in Desert Aire, Washington. It further alleges Ms. Rambow met Defendant Amaro at the tavern, and he identified himself as the owner and encouraged her to drink several shots of tequila and numerous drinks over several hours. At close, Mr. Amaro allegedly invited Ms. Rambow and her friend to stay, play pool, and drink more, which they did despite the allegation Ms. Rambow was "blacked out" from drinking. Later, Mr. Amaro allegedly drove Ms. Rambow and Ms. Hemme to Ms. Hemme's house, where Ms. Rambow required assistance to the guest room. Mr. Amaro stayed to talk with Ms. Hemme, and later she told him to lock the door on his way out. However, the door remained unlocked in the morning, and Ms. Rambow alleges she woke up to intense pain indicative of being vaginally and anally raped.

Ms. Rambow reported the incident to the Grant County Police Department, and the police collected a rape kit for forensics. Mr. Amaro's DNA was identified in the kit, and the police interviewed Ms. Rambow, Mr. Amaro, and Ms. Hemme.

Plaintiff alleges Defendant Cruz was not involved in the incident but was Mr. Amaro's spouse and is part owner of Desert Debauchery.

On March 19, 2024, Plaintiff received notice of the underlying lawsuit filed in Grant County Superior Court, *Rambow v. Amaro et. al.*, case no. 24-2-00177-13.

The Policy issued by Plaintiff to Desert Debauchery and NW Cruz Investments is two part: (1) for Commercial General Liability Coverage and (2) for Liquor Liability Coverage. They each ran from January 13, 2021, to January 13, 2022. Below are the Policy provisions relevant to the Motion for Default Judgment.

The General Liability Policy states, in relevant part:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

[. . .]

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the “coverage territory”;

(2) The "bodily injury" or "property damage" occurs during the policy period;

The General Policy further includes:

**SECTION V – DEFINITION**

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

[. . .]

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

“Bodily injury” or “property damage” expected or intended from the standpoint of the insured. This exclusion does not apply to “bodily injury” resulting from the use of reasonable force to protect persons or property.

Further, all coverage of designated premises under a special endorsement included only the lots at:

- 610 Main St. SW in Desert Aire, Washington; and
- 103 Frontier Way SW in Mattawa, Washington.

Under the Liquor Liability Endorsement in the General Liability Policy, there is an exclusion for insured-caused damage:

> The following replaces Exclusion c., **Liquor Liability**, in Paragraph **2., Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:
>
> **c. Liquor Liability**
>
> "Bodily injury" or "property damage" for which **<u>any insured</u>** may be held liable by reason of:
>
> (1) Causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises for consumption on your premises;
>
> [. . .]
>
> (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

The General Liability Policy also contains an endorsement regarding assault and battery:

**PROVISIONS**

1. The following replaces Paragraph 1.a.(2), and the last sentence

of Paragraph 1.a., of **SECTION I - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY and of SECTION I - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**, but only with respect to the coverage granted by this endorsement:

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A, Coverage B, Coverage - **Assault Or Battery Liability**, Coverage - Abuse Or Molestation Liability (if applicable), or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

2. The following exclusion is added to Paragraph 2., Exclusions, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**Assault Or Battery**

"Bodily injury" or "property damage" arising out of any act of "assault" or "battery" committed by any person, including any act or omission in connection with the prevention or suppression of, or in response to, such "assault" or "battery".

[. . .]

4. The following is added to **SECTION I - COVERAGES:**

**COVERAGE - ASSAULT OR BATTERY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. **<u>However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property</u>**

**<u>damage", or "personal and advertising injury" to which this insurance does not apply</u>**. We may, at our discretion, investigate any "assault or battery offense" and settle any claim or "suit" that may result.

[. . .]

b. This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" caused by an "assault or battery offense" arising out of your business **<u>but only if the "assault or battery offense" was committed in the "coverage territory" during the policy period</u>**. An "assault or battery offense" involving multiple, continuous, sporadic or related acts of "assault" or "battery" will be deemed to have been committed on the date the first of such acts is committed, regardless of when such acts are actually committed.

**2. Exclusions**

[. . .]

**d. Abuse Or Molestation Or Sexual Harassment**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of "abuse or molestation" or "sexual harassment"

[. . .]

6. The following is added to **SECTION II - WHO IS AN INSURED**:

None of the following is an insured for "bodily injury", "property damage" or "personal and advertising injury" caused by an "assault or battery offense":

a. **<u>Any "assault or battery perpetrator".</u>**

[. . .]

9. The following is added to the **DEFINITIONS** Section:

> "Abuse or molestation" means any intentional, reckless or offensive physical contact of a sexual nature with a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected.
>
> "Assault" means any attempt or threat to inflict injury to another, including any conduct that would reasonably place another in apprehension of such injury.
>
> "Assault or battery offense" means a single act of "assault" or "battery", or multiple, continuous, sporadic or related acts of "assault" or "battery", committed by any person or by two or more persons acting together.
>
> All such acts of "assault" or "battery" will be deemed to be one "assault or battery offense", regardless of the number of:
>
> a. Insureds;
> b. Claims made or "suits" brought; or
> c. Persons or organizations making claims or bringing "suits".
>
> "Assault or battery perpetrator" means any person who actually or allegedly commits any "assault" or "battery", and any other person acting together with such person.
>
> "Battery" means any intentional, reckless or offensive physical contact with, or any use of force against, a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected.
>
> "Sexual harassment" means intentional, reckless or offensive non-physical acts, or verbal comments, of a sexual nature.

The Liquor Liability Policy states, in relevant part:

> **SECTION I - LIQUOR LIABILITY COVERAGE**
>
> **1. Insuring Agreement**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which

> this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

Further, the Liquor Policy contains the following relevant definition:

> 5. "Injury" means damages because of "bodily injury" and "property damage", including damages for care, loss of services or loss of support.

Finally, the Liquor Policy includes a provision for assault or battery, relevant to this matter:

> **LIQUOR LIABILITY COVERAGE PART**
>
> SCHEDULE OF ASSAULT OR BATTERY LIMITS
>
> […]
>
> 2. The following exclusion is added to Paragraph 2., Exclusions, of **SECTION I - LIQUOR LIABILITY COVERAGE**:
>
> **Assault Or Battery**
>
> "Injury" arising out of any act of "assault" or "battery" committed by any person, including any act or omission in connection with the prevention or suppression of, or in response to, such "assault" or "battery".
>
> 3. The following Section is added:
>
> **COVERAGE - ASSAULT OR BATTERY LIABILITY**
>
> **1. Insuring Agreement**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies.
>
> […]

**2. Exclusions**

This insurance does not apply to:

[…]

**d. Abuse Or Molestation Or Sexual Harassment**

"Injury" arising out of "abuse or molestation" or "sexual harassment".

4. The following is added to **SECTION II - WHO IS AN INSURED**:

None of the following is an insured for "injury" caused by an "assault or battery offense":

a. Any "assault or battery perpetrator".

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

On June 24, 2025, the Clerk entered a Clerk's Order of Default for Plaintiff and against Defendant Amaro. ECF No. 28. Pursuant to LCivR 55(b), Plaintiff now requests the Court enter default judgment against Defendant Amaro. In considering the Motion, the Court looks next to the *Eitel* factors.

First, Plaintiff will suffer prejudice if the Court does not enter default judgment. Despite receiving service of process, Defendant Amaro has failed to appear to defend himself in this matter. Plaintiff has no other recourse than default judgment to protect itself from the costs of litigating the underlying lawsuit against the terms outlined in the General Policy and Liquor Policy. *See PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. Dec. 27, 2002).

For the Second and Third factors addressing merits and sufficiency of the Complaint, Plaintiff alleges Defendant Amaro's alleged assault of Ms. Rambow does not fall under the coverage of either the General or Liquor Policy for purposes of indemnification. Taking this Complaint as well-pleaded in its allegations, *see In*

*re Visioneering Const.*, 661 F.2d 119, 124 (9th Cir. 1981), Plaintiff has shown the assault did not take place at one of the two areas of "coverage territory" as outlined in Section I of the General Policy. Under the General Policy Section II for Who Is An Insured, and assault or battery "perpetrator" is excluded from the definition of "insured" for the purposes of coverage. The same provision and exclusion of "perpetrators" exists in the Liquor Policy. The Liquor Policy also excludes coverage for assaults resulting from abuse, molestation or sexual harassment. Defendant Amaro is alleged to be the perpetrator of the sexual assault, and as such, he does not qualify for coverage under the General Policy or the Liquor Policy. The merits and sufficiency of Plaintiff's Complaint weigh in favor of granting default judgment.

Fourth, the sum sought on default must be proportional to Defendant's actions. However, Plaintiff is not seeking any sum. It only seeks the declaratory judgment that it owes no duty to defend or indemnify Defendant Amaro. Thus, this factor weighs in favor of default judgment as a proportional remedy.

For the Fifth and Sixth factors regarding material facts and whether default is due to excusable neglect, the two Policies are clear. Plaintiff does not have a duty to indemnify a perpetrator of an assault or battery, nor does it have a duty to defend against an allegation of a crime that took place somewhere other than the "coverage territory." Under the Liquor Policy, Plaintiff does not have a duty to defend for allegations involving abuse, molestation or sexual harassment. Given Defendant Amaro has been interviewed by police for this crime, faces a civil suit in state court, and has received service of process, it is unlikely Defendant Amaro's failure to defend himself and the request for default is a result of "excusable neglect." *Gemmel*, 2008 WL 65604, at *5.

Finally, the Seventh factor favoring resolution on the merits is not dispositive. *PepsiCo*, 238 F. Supp. 2d at 1177; *see also Vawter v. Quality Loan Serv. Corp. of Wash.*, 2011 WL 1584434, at *6 (W.D. Wash. Apr. 27, 2011).

Defendant Amaro has received service regarding this matter and the underlying matter. He is aware but has failed to appear or file an answer challenging Plaintiff's suit for declaratory judgment. Thus, Defendant Amaro has made a "decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. When considered as a whole, the factors weigh in favor of granting the motion for default judgment.

Having considered the Rule 55 and LCivR 55 requirements, the *Eitel* factors, the case history, and the claims in the Complaint, the Court finds good cause to grant the motion for default judgment as to Defendant Amaro.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Default Judgment, ECF No. 29, is **GRANTED as to Defendant Isidro Cruz Amaro only**.

2. The Clerk of Court is directed to enter default judgment **against** Defendant Isidro Cruz Amaro, and **in favor** of Plaintiff in the above-captioned matter. Plaintiff does not owe Defendant Amaro a duty to defend or indemnify in the underlying lawsuit in Grant County Superior Court, *Rambow v. Amaro et. al.*, case no. 24-2-00177-13.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order and provide copies to counsel and Defendant Amaro at his last known address.

**DATED** this 21st day of July 2025.




Stan Bastian
Chief United States District Judge